ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, plaintiff Salvatore Pollino ("Plaintiff) brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 17), and Plaintiff's reply (Dkt. 19). For the reasons discussed below, the Commissioner's motion (Dkt. 17) is granted and Plaintiff's motion (Dkt. 12) is denied.
BACKGROUND
Plaintiff protectively filed his applications for DIB and SSI on August 14, 2014. (Dkt. 8 at 15, 89-90).[1] In his applications, Plaintiff originally alleged disability beginning January 1, 2009, due to depression, anxiety, insomnia, and bladder problems. (Id. at 73, 80). Thereafter, Plaintiff requested an amended onset date of February 27, 2013. (Id. at 16, 207). Plaintiff's applications were initially denied on December 18, 2014. (Id. at 15, 91-96). A hearing was held before administrative law judge ("ALJ") Gretchen Mary Greisler in Rochester, New York, on April 12, 2017. (Id. at 15, 40-72). On June 27, 2017, the ALJ issued an unfavorable decision. (Id. at 12-27). Plaintiff requested Appeals Council review; his request was denied on December 26, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 6-8). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining *432 whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Bowen v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R § 404.1560(c).
*433 DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on September 30, 2013. (Dkt. 8 at 18). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 27, 2013, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of bipolar disorder, depression, and anxiety. (Id. ). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, prostatism/hematuria, and frequent urination were non-severe. (Id. at 19). With respect to Plaintiff's representations that he suffered from eczema, dermatitis, and mild sleep apnea, the ALJ concluded that these were not medically determinable impairments. (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. ). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching her conclusion. (Id. at 19-21).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the additional limitations that Plaintiff:
can perform simple, routine and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions and few, if any, workplace changes. Can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, a production rate pace, sharing of job tasks or contact with the public. Can tolerate occasional interaction with supervisors and coworkers.
(Id. at 22). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 26).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of laundry worker II and kitchen helper. (Id. at 26-27). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 27).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
Plaintiff asks the Court to remand this matter to the Commissioner, arguing: (1) the ALJ erred in weighing the medical opinion evidence from Plaintiff's treating sources; (2) the RFC is not supported by substantial evidence; and (3) the ALJ erred by improperly assessing Plaintiff's credibility. (Dkt. 12-1 at 6). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.
A. Weighing of Treating Source Opinions
Plaintiff contends that the ALJ improperly assessed the opinions of Ronald Spurling, M.D., and David Roemer, M.D., Plaintiff's treating psychiatrists. Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is *434 "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Id. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" Scitney v. Colvin , 41 F.Supp.3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).
Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2) ; see also Harris v. Colvin , 149 F.Supp.3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons" ' for the weight given to a treating source opinion." (quoting Halloran , 362 F.3d at 32 ) ). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific ...." Harris , 149 F.Supp.3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran , 362 F.3d at 33.
Plaintiff began treating with Dr. Spurling on February 20, 2013. (Dkt. 8 at 535). Dr. Spurling completed two evaluations of Plaintiff's mental functional limitations. (Id. at 451-54, 486-89). The first evaluation was completed on March 23, 2015, and the second was completed on November 30, 2015. (Id. ). On both occasions, Dr. Spurling found that Plaintiff had mild limitations (meaning unable to function one to ten percent of the time) in the following categories: ability to comprehend and carry out simple instructions; ability to remember work procedures; ability to concentrate and attend to simple work tasks; and ability to make simple, work-related decisions. (Id. at 451-52, 586-87). Plaintiff had moderate limitations (meaning unable to function eleven to twenty-five percent of the time) in the following categories: ability to communicate clearly and effectively; ability to appropriately work in coordination with or proximity to co-workers; ability to interact appropriately with the general public; ability to maintain regular attendance and be punctual within customary tolerances; ability to tolerate customary work pressures in a work setting including ordinary job goals, production requirements and demands; and ability to perform at a consistent pace.[2] ( *435 Id. at 452-53, 487-88). Dr. Spurling further opined that Plaintiff's condition was likely to deteriorate if placed under stress, he would be absent more than four days per month, and he could handle part-time work of not more than five hours per day or twenty hours per week. (Id. at 453-54, 488-89). On August 12, 2016, Dr. Spurling filed a statement confirming that he had reviewed his 2015 evaluations of Plaintiff, and that "[t]here has been no change and the limitations continue." (Id. at 532).
The ALJ gave "great weight" to Dr. Spurling's opinions, based on his treatment relationship with Plaintiff, his area of specialization, and because his opinions relating to Plaintiff's functional limitations were mostly consistent with his treatment notes. (See id. at 25 ("Great weight is accord[ed] to the opinions of Dr. Spurling, as he has a long treatment relationship with the claimant and his conclusions ... are sustained by objective findings, are consistent with his treatment notes and within his area of specialization.") ). However, the ALJ found that Dr. Spurling's opinions that Plaintiff was capable of only part-time work and would be absent more than four days per month were of limited evidentiary value because they lacked objective support and were supported only by Plaintiff's subjective complaints. (Id. ).
The Court has reviewed Dr. Spurling's opinions and his treatment notes and finds that the ALJ's assessment of the opinions was proper. The ALJ considered the factors required by the treating physician rule, including Dr. Spurling's area of specialization, his treatment relationship with Plaintiff, and the consistency of his opinions with other information in the record. The ALJ properly rejected Dr. Spurling's opinions relating to Plaintiff's ability to perform full-time work and absences as unsupported by the record. Neither of the opinions offered by Dr. Spurling include any explanation as to why he believed that Plaintiff could work less than fulltime or would be absent more than four days per month. See Johnson v. Comm'r of Soc. Sec. , 669 F. App'x 580, 581 (2d Cir. 2016) (ALJ's decision to give less than controlling weight to medical opinion evidence was proper, where the opinions were not supported by the medical evidence, were at times internally inconsistent, and relied primarily on the plaintiff's self-reported symptoms). Rather, these opinions are offered on a check-box form. See Goodale v. Astrue , 32 F.Supp.3d 345, 358 (N.D.N.Y. 2012) (ALJ did not err by giving little weight to treating physician's opinion that used a "check box" form that counsel had provided). The lack of explanation is problematic, as Dr. Spurling's opinions regarding Plaintiff's ability to work fulltime and absences are belied by Dr. Spurling's own assessment that Plaintiff had only mild or moderate limitations for mental functioning. Further, there no is no objective evidence in Dr. Spurling's treatment notes supporting the conclusion that Plaintiff would not be able to sustain fulltime employment due to his functional limitations.[3] Rather, other than documenting Plaintiff's subjective complaints and some anxiousness, Dr. Spurling's treatment notes reveal mostly normal mental status *436 examinations, and a good response to medications. (See, e.g. , Dkt. 8 at 415-16, 421-23, 425, 427-28, 430-31, 433-34, 436-37, 463-64, 479-81, 493-94). Further, in July 2015, Dr. Spurling noted that while Plaintiff faced several "stressors," he was doing "fairly well from a psychiatric perspective," had a good response to medications, his bipolar disorder was "fairly stabilized," and his "mild to moderate" depression symptoms were "driven by his multiple psychosocial and financial stressors." (Id. at 481). Dr. Spurling also noted that Plaintiff's anxiety symptoms were well-controlled by his medication regimen. (Id. ).
Plaintiff argues that the ALJ failed to consider Dr. Spurling's opinion that Plaintiff would be "unable to function" or "off task" for up to twenty-five percent of the workday. (Dkt. 12-1 at 20-21). Plaintiff's argument is based on a mischaracterization of the record. Nowhere in either of Dr. Spurling's opinions does he opine that Plaintiff is unable to function, or would be off task, twenty-five percent of the workday. Rather, based on Dr. Spurling's assessment that Plaintiff has moderate limitations (meaning unable to function eleven to twenty-five percent of the time) in some areas of mental functioning, Plaintiff's counsel extrapolates that Plaintiff is "unable to function" or will be "off task" twenty-five percent of the workday. (Dkt. 12-1 at 20-21; Dkt. 19 at 2). However, Plaintiff's counsel is not a medical doctor and may not simply presume that, because Dr. Spurling found that Plaintiff had moderate limitations in some areas of mental functioning, that Plaintiff would be off task or completely unable to function in all areas for twenty-five percent of the workday. Remand is not required on this basis.
Plaintiff began treating with Dr. Roemer in July 2016. (Dkt. 8 at 621, 638). On April 10, 2017, Dr. Roemer completed the same evaluation completed by Dr. Spurling. (Id. at 619-22). Plaintiff was mildly limited in his ability to communicate clearly and effectively. (Id. at 620). Dr. Roemer opined that Plaintiff was moderately limited in the following categories: ability to comprehend and carry out simple instructions; ability to remember work procedures; ability to appropriately work in coordination with or proximity to co-workers; ability to interact appropriately with the general public; ability to maintain regular attendance and be punctual within customary limitations; ability to concentrate and attend to simple work tasks; and ability to perform at a consistent pace. (Id. at 619-20). Plaintiff had marked limitations in his ability to make simple, work-related decisions and in his ability to tolerate customary work pressures in a work setting, including ordinary job goals, production requirements, and demands. (Id. at 620-21). Dr. Roemer further opined that Plaintiff was likely to deteriorate if placed under stress and would be absent more than four days per month. (Id. at 621-22). Dr. Roemer found that Plaintiff could work four hours per day, but also noted that he was "not sure [Plaintiff] can work at all!" (Id. at 622).
The ALJ gave "partial weight" to Dr. Roemer's opinion. (Id. at 25). The ALJ explained that although Dr. Roemer began treating Plaintiff in July 2016, there were no objective findings supporting his opinion that Plaintiff would be unable to work on a regular and continuing basis. (Id. ). As summarized by the ALJ in the written determination, Dr. Roemer's treatment notes lack support for his opinion that Plaintiff is unable to sustain fulltime employment and would be absent more than four days per month. While Dr. Roemer's treatment notes document Plaintiff's subjective complaints, mental status examinations were mostly normal. (See, e.g., id. at 644-45, 648-49, 651-52, 675-76, 679-80, 682-83, *437 686-87, 689-90, 694). Plaintiff also experienced improvements in his depression, mood, and temper. (See, e.g., id. at 644, 648, 651, 675, 679, 685-86, 689, 693). Further, the ALJ noted that Dr. Roemer assessed Plaintiff with only moderate limitations in most areas of mental functioning. (Id. at 25). The ALJ also explained that Dr. Roemer's opinion that Plaintiff had marked limitations in his ability to make simple, work-related decisions, was belied by Plaintiff's activities of daily living and in his ability to live independently. (Id. ).
The Court has reviewed Dr. Roemer's opinion and treatment notes and agrees with the ALJ's assessment of the opinion. Dr. Roemer's opinion that Plaintiff is unable to sustain full-time employment is contradicted by his own assessment that Plaintiff had only moderate limitations in most areas of mental functioning. See Illenberg v. Colvin , No. 13-CV-0916 (AT)(SN), 2014 WL 6969550, at *20, 2014 U.S. Dist. LEXIS 171290, at *57 (S.D.N.Y. Nov. 20, 2014) ("When a treating physician's opinion is internally inconsistent ... the ALJ may give the treating physician's opinion less weight."), adopted , 2014 WL 6969550, 2014 U.S. Dist. LEXIS 170915 (S.D.N.Y. Dec. 9, 2014). Further, like Dr. Spurling's opinions, Dr. Roemer's opinion regarding Plaintiff's inability to sustain fulltime employment is offered on a check-box form, totally devoid of explanation as to how he arrived at those assessments. Accordingly, it was proper for the ALJ to afford Dr. Roemer's opinion partial weight. See Charlotte K. v. Comm'r of Soc. Sec. , No. 3:17-CV-642 (ATB), 2018 WL 4153925, at *14, 2018 U.S. Dist. LEXIS 147671, at *39 (N.D.N.Y. Aug. 29, 2018) ("conflicts in the evidence are for the ALJ to resolve, and a treating provider's opinion, particularly when it is expressed in a 'check box' questionnaire, may be given less weight when it is contradicted by substantial evidence in the record.").
Plaintiff takes issue with the ALJ's rejection of treating source opinion evidence based on the lack of objective support for the opinions, arguing that "[g]enerally speaking, a treating physician's medical opinion need not be supported by clinical or laboratory findings." (Dkt. 12-1 at 24). While an ALJ may adopt a medical opinion based entirely on subjective reports rather than objective findings, it is well-settled that an ALJ may give less weight to or reject a medical opinion that lacks objective support. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). While Plaintiff argues that objective findings are of less importance for mental impairments, even in those cases, it remains the ALJ's duty to evaluate opinion evidence in light of the entire record, and simply accepting Dr. Spurling's and Dr. Roemer's unsupported opinions relating to Plaintiff's ability to sustain fulltime work and absences would amount to an abandonment of that duty. See De Mota v. Berryhill , No. 15Civ. 6855 (PED), 2017 WL 1134771, at *4, 2017 U.S. Dist. LEXIS 44401, at *9 (S.D.N.Y. Mar. 24, 2017) ("An ALJ is obliged to consider medical opinions on a claimant's functioning and is tasked with reaching a residual functional capacity assessment based on the record as a whole. It is the Commissioner's role to weigh medical opinion evidence and to resolve conflicts in that evidence.") (internal citation and quotation omitted). Here, it is clear from the record and the written determination that portions of the treating source opinion evidence conflicted with each physician's own treatment notes and assessment of Plaintiff's categories of mental functioning, which were limited to mostly mild or moderate *438 limitations. This ALJ's consideration of the lack of objective evidence was proper in this instance. Remand is not required on this basis.
B. Assessment of Plaintiff's RFC
Plaintiff next contends that the ALJ erred by arriving at an improper RFC that is not supported by substantial evidence. (Dkt. 12-1 at 6). Plaintiff's argument regarding the RFC appears to be made in conjunction with his argument regarding the improper evaluation of opinion evidence. (See id. at 20-29). In deciding a disability claim, an ALJ is tasked with "weighting] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill , No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 20030, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
The Court has reviewed the medical opinion evidence in the record, as well as the assessed RFC. It is clear from the record that the ALJ largely adopted Dr. Spurling's opinions relating to Plaintiff's functional limitations. In other words, the RFC, which provides that Plaintiff can perform simple, routine and repetitive tasks, and can make simple, work-related decisions, is informed by Dr. Spurling's opinion that Plaintiff has mild limitations (meaning unable to function one to ten percent of the time) in his ability to comprehend and carry out simple instructions, remember work procedures, concentrate and attend to simple work tasks, and make simple, work-related decisions. (See Dkt. 8 at 451-52, 586-87). Further, the RFC accounts for Dr. Spurling's and Dr. Roemer's opinions that Plaintiff would deteriorate under stress by limiting him to a work environment free of fast-paced production requirements, involving only simple, work-related decisions and few workplace changes, and a low level of work pressure (work not requiring multitasking, detailed job tasks, significant independent judgment, production rate pace). Finally, the RFC provides for no contact with the public and only occasional interaction with supervisors and coworkers, which is consistent with Dr. Spurling's and Dr. Roemer's opinions that Plaintiff had moderate limitations (meaning unable to function eleven to twenty-five percent of the time) in his ability to communicate clearly and effectively, appropriately work in coordination with or proximity to co-workers, and interact appropriately with the general public. (Id. at 452, 487, 620).
Plaintiff argues that, in assessing the RFC, it was improper for the ALJ to reject Dr. Spurling's and Dr. Roemer's *439 opinions regarding Plaintiff's ability to sustain fulltime employment and absences because there was no other opinion evidence in the record contradicting those opinions. (Dkt. 12-1 at 25). However, an ALJ is not required to secure an additional medical opinion specifically contradicting Dr. Spurling's and Dr. Roemer's opinions regarding Plaintiff's ability to sustain fulltime employment. Rather, as noted above, the ALJ is required to evaluate the opinion of a treating physician in accordance with the treating physician rule and give good reasons if she gives less than controlling weight to the opinion. Halloran , 362 F.3d at 32. Here, the ALJ discussed the opinion evidence in the record and gave good reasons for rejecting portions of the opinions, including that those opinions were not supported by other medical evidence in the record. Remand is not required on this basis.
C. The Credibility Assessment
Plaintiff's final argument is that the ALJ improperly assessed Plaintiff's credibility. (Dkt. 12-1 at 29-32). The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." Whiting v. Astrue , No. CIV.A. 1:12-274, 2013 WL 427171, at *6, 2013 U.S. Dist. LEXIS 15109, at *22 (N.D.N.Y. Jan. 15, 2013), adopted , 2013 WL 427166, 2013 U.S. Dist. LEXIS 14944 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Perez v. Barnhart , 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).
In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. Meadors v. Astrue , 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce' " her symptoms. Id. (quoting 20 C.F.R. § 404.1529(c)(1) ). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Id.
Here, the ALJ engaged in the two-step inquiry. (See Dkt. 8 at 22 (explaining two-step inquiry) ). Specifically, the ALJ discussed Plaintiff's testimony regarding his impairments and concluded that, while Plaintiff's medically determinable impairments could reasonably be expected to produce some of the above alleged symptoms, "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id. at 22-23). The ALJ concluded that "[a]ccordingly, these statements have been found to affect [Plaintiff's] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (Id. at 23).
In the written determination, the ALJ cited to specific, objective and non-objective evidence in the record contradicting Plaintiff's claim that he is unable to work, including that Plaintiff largely responded well to mental health treatment, had mostly normal mental status examinations, and was able to engage in some work on a part-time basis. (Id. at 23-24). The ALJ also noted that Plaintiff's testimony that he experienced side effects from medications *440 was contradicted by the record, which revealed that Plaintiff consistently denied experiencing side effects from his medication. (Id. at 24; see, e.g., id. at 421 (in September 2013, Plaintiff reported that "the medication is helping," and "denie[d] any side effects to the Depakote."); id. at 506 (in March 2016, Plaintiff reported that "his appetite is good and he denies any side effects with his medications.") ). The ALJ's consideration of this evidence was proper. See Robinson v. Comm'r of Soc. Sec. , No. 1:16-CV-00648 (MAT), 2018 WL 3583236, at *5, 2018 U.S. Dist. LEXIS 125613, at *16-17 (W.D.N.Y. July 26, 2018) ("the ALJ appropriately relied on inconsistent statements by Plaintiff to determine that he was less than fully credible.").
Plaintiff argues that it was improper for the ALJ to consider Plaintiff's ability to perform part-time work, as "this work activity does not demonstrate that the claimant had the ability to work on a full-time basis." (Dkt. 12-1 at 31). Plaintiff's argument misses the mark. "The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates [his] ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding [his] symptoms to the extent that it is inconsistent with other evidence." Morris v. Comm'r of Soc. Sec. , No. 5:12-cv-1795 (MAD/CFH), 2014 WL 1451996, at *8, 2014 U.S. Dist. LEXIS 51036, at *21 (N.D.N.Y. Apr. 14, 2014). The ALJ specifically found that Plaintiff did not engage in substantial gainful work activity during the period at issue. (Dkt. 8 at 18). However, the ALJ explained that Plaintiff's ability to perform part-time work contradicted his testimony regarding the severity of his impairments and his report that no one would hire him "because of his history." (Id. at 24). It was proper for the ALJ to consider Plaintiff's part-time work in this context. See Breinin v. Colvin , No. 5:14-CV-01166 (LEK/TWD), 2015 WL 7749318, at *15, 2015 U.S. Dist. LEXIS 162468, at *46 (N.D.N.Y. Oct. 15, 2015) (in assessing the plaintiff's credibility, "[t]he ALJ properly discussed Plaintiff's work attempts, including her participation in and subsequent termination from VESID, and testimony that she could work as a receptionist in a calm environment."), adopted , 2015 WL 7738047, 2015 U.S. Dist. LEXIS 162467 (N.D.N.Y. Dec. 1, 2015).
Plaintiff similarly argues that it was improper for the ALJ to consider his activities of daily living in assessing his credibility, particularly because Plaintiff alleged mental health impairments, rather than physical impairments. (Dkt. 12-1 at 30-32). Plaintiff's argument is meritless. "An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination." Pennock v. Comm'r of Soc. Sec. , No. 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5, 2016 U.S. Dist. LEXIS 36514, at *14-15 (N.D.N.Y. Feb. 23, 2016), adopted , 2016 WL 1122065, 2016 U.S. Dist. LEXIS 36516 (N.D.N.Y. Mar. 22, 2016). Contrary to Plaintiff's contention, an ALJ's ability to consider a plaintiff's activities of daily living when evaluating his credibility is not limited to cases in which the plaintiff has only physical impairments. See, e.g., Andrews v. Berryhill , No. 17-CV-6368 (MAT), 2018 WL 2088064, at *6, 2018 U.S. Dist. LEXIS 75920, at *18 (W.D.N. Y. May 4, 2018) (where the plaintiff's impairments included mood disorder and major depressive disorder, the ALJ properly considered the plaintiff's activities of daily living, in determining that the plaintiff was capable of performing simple, routine tasks); David v. Comm'r of Soc. Sec. , No. 7:16-CV-1121 (GTS), 2017 WL 4541406, at *8, 2017 U.S. Dist. LEXIS 167205, at *25-27 (N.D.N.Y. Oct. 10, 2017) (where the plaintiff's severe impairments included depressive *441 disorder, anxiety disorder, personality disorder, and history of learning disorder, ALJ properly considered the plaintiff's daily activities, which "were inconsistent with the level of functional limitations [the plaintiff] alleged."). Here, the ALJ considered Plaintiff's performance of part-time work and community service hours, attending treatment, good appetite, control of his anger, cessation of substance abuse, ability to sleep and concentrate, and report that he had "enough energy," as belying his complaints regarding the severity of his impairments. (See id. at 24). These considerations were proper, and remand is not required on this basis.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 17) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

In November 2015, Dr. Spurling opined that Plaintiff had mild-to-moderate limitations in his ability to perform at a consistent pace. (Dkt. 8 at 487).

On May 11, 2015, Dr. Spurling noted that Plaintiff continued to be depressed and had difficulties finding employment. (Dkt. 8 at 465). Dr. Spurling further noted that he filled out paperwork for Plaintiff's application for disability, and found that while Plaintiff could perform "occasional odd jobs," he was not capable of competitive employment on a regular basis. (Id. ). Dr. Spurling did not explain what information formed the basis for his opinion that Plaintiff could not sustain fulltime employment.